# UNITED STATES DISTRICT COURT

# DISTRICT OF MAINE

| | |
|---|---|
| **HOME FASHIONS DISTRIBUTOR, INC.,** ) | |
| ) | |
| **PLAINTIFF** ) | |
| ) | |
| v. ) | **CIVIL NO. 2:12-CV-250-DBH** |
| ) | |
| **HANOVER INSURANCE COMPANY,** ) | |
| ) | |
| **DEFENDANT** ) | |

## DECISION AND ORDER ON DEFENDANT'S MOTION TO DISMISS

The issue here is interpretation of an Open Marine Cargo Policy, particularly the provision that deals with fraudulent bills of lading. On the insurer's motion to dismiss, I conclude that the policy language does not provide coverage given the facts alleged in the Second Amended Complaint.

### FACTS AND PROCEDURAL HISTORY

I take the facts as alleged in the Second Amended Complaint. I also rely upon documents (insurance policy, invoices, packing lists, arrival notice, and global bills of lading[1]) attached to the Second Amended Complaint. See Trans-Spec Truck Serv., Inc. v. Caterpillar Inc., 524 F.3d 315, 321 (1st Cir. 2008).

---

[1] One of the bills of lading is omitted from the Second Amended Complaint, and by apparent clerical error a duplicate arrival notice is attached as Exhibit D. I have therefore consulted the bill of lading that was attached to the First Amended Complaint.

Home Fashions Distributor, Inc., a Maine company doing business in Wells, Maine, imports and resells textile goods from foreign manufacturers. It placed two orders for terry bath towels with Hassan Weaving Mills, a Pakistani firm. The Pakistani firm presented global bills of lading with respect to the two shipments, thereby obtaining payment of $65,000 and $28,800 respectively from Home Fashions' irrevocable line of credit. But when the containers of goods arrived, "the goods that had been loaded onto the container were substantially nonconforming to those ordered" and were "essentially junk." Second Am. Compl. ¶¶ 16, 18 (ECF No. 16).

The defendant The Hanover Insurance Company insured Home Fashions under an Open Marine Cargo Policy.

The policy's declaration page states that the goods insured were "goods of every description incidental to the Insured's business consisting principally of, but not limited to **BEDDING, TOWELS, LINENS, HOUSEHOLD DÉCOR**." Ex. A, Marine Open Cargo Policy, at 1 (ECF No. 16-1). Consistently, the body of the policy states that "[t]he interests insured under this policy are . . . goods of every description incidental to the Insured's business consisting principally of, but not limited to '**As Per Declaration Page**.'" Id. at 6, Clause No. 3.

The Hanover policy uses the quaint language of marine policies to describe the "perils" insured against:

> Touching the adventures and perils which The Hanover is contented to bear, and takes upon itself, in this voyage, they are of the seas, fires, jettisons, assailing thieves, barratry of the Master and Mariners, and all other like perils, losses and misfortunes that have or shall come to the hurt, detriment or damage of the said goods, or any

>part thereof except as may be otherwise provided for herein or endorsed hereon.

Id. at 7, Clause No. 6.  Clause No. 55 deals specifically with "Fraudulent Bills of Lading":

>This policy also covers direct physical loss or damage through the acceptance by the Insured, its Agents or the shipper of fraudulent bills of lading, shipping receipts, messenger receipts, or other shipping documents.
>
>Also physical loss or damage caused by the utilization of legitimate bills of lading and/or other shipping documents without the authorization and/or consent of the Insured or its agents.

Id. at 18.  Home Fashions asserts that "[i][n shipping junk goods instead of the terry bath towels ordered, Hassan presented fraudulent bill(s) of lading or a bill of lading issued without the authorization or consent of Home Fashions." Second Am. Compl. ¶ 23.  It claims that it "suffered a direct physical loss and damage within the meaning of the Policy." Id. at ¶ 24.  It seeks to recover its payments under the line of credit as well as "bank fees, duties, and costs to unload, store, and ship the nonconforming goods received." Id. at ¶ 26.  It seeks a declaratory judgment of coverage and sues for breach of contract.

The Hanover moved to dismiss the Second Amended Complaint for failure to state a claim upon which relief can be granted, Fed. R. Civ. P. 12(b)(6).

## ANALYSIS

The court has admiralty jurisdiction, as the parties agree.  See Commercial Union Ins. Co. v. Pesante, 459 F.3d 34, 37 (1st Cir. 2006) ("This case arises under our admiralty jurisdiction since it involves a marine

insurance policy." (citation omitted)).  The policy provides that it is to be "governed and construed in accordance with federal maritime common law of the United States.  In the absence of controlling federal maritime common law of the United States, the law of the state of New York shall apply, irrespective of any principles of choice of law."  Ex. A at 22, Clause No. 73.  The parties agree on the choice of law.  Pl.'s Opp'n to Def.'s Mot. to Dismiss at 4 n.1 (ECF No. 19); Def.'s Rule 12(b)(6) Mot. to Dismiss at 6, 10 (ECF No. 18).

The primary dispute here is over the policy's "direct physical loss or damage" requirement for fraudulent bills of lading coverage.

***Previous Caselaw***

In Chem. Bank v. Affiliated FM Ins. Co., 815 F. Supp. 115 (S.D.N.Y. 1993), the Southern District of New York dealt with a fraudulent bills of lading clause in an Open Marine policy.  The claim was based upon payments made for coffee that, contrary to what the bills of lading stated, was not in fact shipped.  There, the fraudulent bills of lading clause provided coverage for "loss or damage occasioned through the acceptance . . . of fraudulent Bills of Lading."  Id. at 118.  The court observed that while the rest of the marine policy generally confined coverage to physical goods actually in existence, the fraudulent bills of lading clause lacked "such terms as 'actual,' 'present,' 'physical,' 'coffee [the item to be shipped],' or 'merchandise.'"  Id. at 119.  The court therefore denied summary judgment to the insurer.  The court also observed that "[t]he one point which appears beyond dispute is that the issue of fraudulent documents concerning nonexistent goods was at the forefront of consideration in the insurance industry during the relevant period, thus

4

indicating that the insurer was on notice that clear language might be desirable if coverage was to be negated." Id. at 120 n.12.

Next, in Centennial Ins. Co. v. Lithotech Sales, LLC, 187 F. Supp. 2d 214 (D.N.J. 2001), aff'd, 29 F.App'x 835 (3d Cir. 2002), the District of New Jersey dealt with a fraudulent bills of lading clause that provided coverage for "loss or damage *to the property insured* occasioned through the acceptance . . . of Fraudulent Bills of Lading" (emphasis added). Id. at 216. The court observed that the Chem. Bank case would have been different if limiting language had been included in its fraudulent bill of lading clause, and concluded that in Centennial, appropriate limiting language had been added. The claim was for loss caused by delivery of a different printing press than the one ordered. The Centennial court ruled that there was no loss or damage "to the property insured" by use of a bill of lading that described a different printing press than the one actually shipped. Id. at 219-21.[2]

Coast to Coast Seafood, Inc. v. Assurances Generales de France, 50 P.3d 662 (Wash. App. 2002), was also a claim under a marine policy. Shipments of seafood were short on quantity or different from what had been ordered. The marine policy had no fraudulent bills of lading clause. Instead, the claim was made under the policy's all risks provision. The court concluded that insurance coverage was limited to things that happened *in transit*. Like Centennial, the court described Chem. Bank as allowing coverage under a

---

[2] For discussion of the significance of Chem. Bank and Centennial, see Maritime Law Association of the United States, Committee on Marine Insurance and General Average Newsletter Spring 2004, The MLA Report 13900-04 (2004), http://www.mlaus.org/archives/library/892.pdf.

5

fraudulent bills of lading clause where the clause did not "limit[ ] coverage to physical goods actually in existence." Id. at 666.

Meridian Textiles v. Indem. Ins. Co. of N. Am., 2008 WL 3009889 (C.D. Cal. 2008), involved interpretation of a Marine Open Ocean Cargo Policy (but not a fraudulent bills of lading clause). The policy covered "all risks of *physical loss or damage* from any external cause . . ." (emphasis added). Id. at *2. The insured sought coverage for its yarn that had been physically damaged by a fire (that part of the claim was uncontested) as well as for other yarn that was not physically harmed but suffered harm to its "reputation" vis-à-vis customers in being associated with the yarn exposed to the circumstances of a fire. Applying California law, the court concluded that "[t]he word 'physical' in the policy provision 'loss or damage' modifies both 'loss' and 'damage.' Thus, the policy covers only physical damage or physical loss."[3] Id. at *3 (citation omitted). The court went on to hold that "physical damage is a condition precedent to coverage," id. at *4, and therefore that "perception of loss by the market for plaintiff's yarn, is not, by itself, sufficient to trigger coverage under the present policy, which covers 'all risks of physical loss or damage from any external cause.' Instead coverage under defendant's policy requires proof of an actual physical loss." Id. at *6.

The parties also cite New York cases that deal with the term "physical loss or damage," but not in marine policies. They are consistent with the Meridian Textiles interpretation. See Roundabout Theatre Co., Inc. v. Cont'l

---

[3] Both parties seem to agree with that interpretation of The Hanover's language as well. Pl.'s Opp'n to Def.'s Mot. to Dismiss at 4; Def.'s Rule 12(b)(6) Mot. to Dismiss at 12.

Cas. Co., 751 N.Y.S.2d 4 (N.Y. App. Div. 2002) (holding that a "direct physical loss or damage" clause did not cover loss of business resulting from off-site property damage restricting access to the insured premises); Klein's Moving & Storage, Inc. v. Westport Ins. Corp., 766 N.Y.S.2d 495 (N.Y. Sup. Ct. 2003) (holding that a "direct physical loss" clause did not cover the costs of moving and manipulating insured property during the restoration of the insured premises after a fire).

***The Hanover Policy and Home Fashions' Claim***

The Hanover's fraudulent bills of lading policy language has narrowed the provision that provided coverage in Chem. Bank by adding the limiting adjectives "direct physical" to the nouns "loss or damage." ("Physical" was one of the words that Chem. Bank suggested was missing from the policy language there.)  On the allegations of the Second Amended Complaint here, there was no direct physical damage or loss to the insured goods.  Instead, Home Fashions' loss was that it did not receive from the Pakistani firm that which it had bargained for, and its funds were released from its letter of credit on the fraudulent representation in the bill of lading that conforming goods had been shipped.[4]  Home Fashions insists that it "has alleged a direct physical loss of goods flowing from the presentation of fraudulent bills of lading." Pl.'s Opp'n to Def.'s Mot. to Dismiss at 9.  Whether Home Fashions' loss was a direct physical loss is a question of law to be determined by the court on the facts alleged.

---

[4] I do not separately analyze the provision for unauthorized presentation of a bill of lading. Home Fashions has made no factual allegation to support that claim (except in the implicit sense that any fraudulent presentation would be, ipso facto, unauthorized).  In any event, the analysis and outcome are the same.

Here, Hassan shipped goods different from the contracted-for goods; Hassan's action occasioned an economic loss to Home Fashions because the goods shipped were "junk," not worth what Home Fashions paid for them. But the fraudulent bills of lading did not cause Home Fashions to physically lose the goods, nor were they physically damaged.[5]

I conclude that under the fraudulent bills of lading clause of The Hanover's Open Marine Cargo policy, Home Fashions' loss is not covered. Because the language of the provision is not ambiguous, there is no need for extrinsic evidence of the parties' intent.

I therefore **GRANT** the defendant's motion to dismiss.

**SO ORDERED.**

**DATED THIS 6TH DAY OF MARCH, 2013**

/S/D. BROCK HORNBY
**D. BROCK HORNBY**
**UNITED STATES DISTRICT JUDGE**

---

[5] Home Fashions cites cases involving theft or conversion, Nautilus Grp., Inc. v. Allianz Global Risks US, 2012 WL 760940, at *6-7 (W.D. Wash. 2012); Intermetal Mexicana, S.A. v. Ins. Co. of N. Am., 866 F.2d 71, 78 (3d Cir. 1989); Great N. Ins. Co. v. Dayco Corp., 620 F. Supp. 346, 350-51 (S.D.N.Y. 1985), but those case involved conversion or theft of the goods from the possession of the insured. It is true that Home Fashions "has neither possession nor control over the items that Hassan purported to ship when it presented a fraudulent bill of lading," Pl.'s Opp'n to Def.'s Mot. to Dismiss at 5-6, but that does not make the situation "functionally the same as an act of conversion," id. at 6, and does not make Home Fashions' loss a "direct physical loss" within the meaning of the policy.